UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DARLENE A. JONES | * | CIVIL ACTION NO. 16-12569 |
| | * | |
| VERSUS | * | SECTION: "H"(1) |
| | * | |
| NANCY A. BERRYHILL, ACTING | * | JUDGE JANE TRICHE MILAZZO |
| COMMISSIONER OF THE SOCIAL | * | |
| SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************** | * | |

REPORT AND RECOMMENDATION

The plaintiff, Darlene A. Jones, seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. § 1381, *et seq.* The matter has been fully briefed on cross-motions for summary judgment. For the following reasons, IT IS RECOMMENDED that the Motion for Summary Judgment filed by the plaintiff (Rec. Doc. 15) be DENIED; and the Motion for Summary Judgment filed by the Commissioner (Rec. Doc. 16) be GRANTED.

**Procedural Background**

Ms. Jones applied for SSI and DIB on December 19, 2013, asserting a disability onset date of June 20, 2013. R. at 81, 87. She alleged the following illnesses, injuries, or conditions: bronchitis, chronic obstructive pulmonary disease ("COPD"), hypertension, carpal tunnel, and swelling in the wrists. R. at 72-73, 83-84. On April 8, 2014, her claim was denied by the state agency. R. at 79. The Disability Determination Explanations concluded "[t]he medical evidence shows that while you have bronchitis, chronic obstructive pulmonary disease, hypertension, carpal

1

tunnel and swelling in wrists, these conditions are not severe enough to keep you from working."
R. at 86, 92.

Ms. Jones obtained counsel and requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 21, 2015. Because voluminous medical records had just been received at the time of the first hearing, a second hearing was held on October 8, 2015. On December 21, 2015, the ALJ issued an adverse decision. The Appeals Council denied review on May 5, 2016.

On July 8, 2016, Ms. Jones filed a Complaint in this Court to review the Commissioner's decision. (Rec. Doc. 1). The Commissioner answered and filed the administrative record. (Rec. Docs. 12, 13). The parties filed cross-motions for summary judgment. (Rec. Docs. 15, 16). Ms. Jones is represented by counsel.

### **Evidence in the Record**

*Claimant's Testimony and Disability Application Documents*

Ms. Jones testified that she completed the 11th grade[1] and did not obtain a GED. R. at 25. She testified that around June 2013 she began going to the hospital because she had trouble catching her breath after walking a short distance of about a block. R. at 37. She testified that her last work was making sandwiches at Donut King for three or four days in 2013. R. at 56. She said she stopped working because she was fatigued and her breathing was bad. R. at 57. Before working at Donut King, she performed janitorial work at City Hall. R. at 57-58. She also testified that she worked at the Superdome for two days in August 2013. R. at 58. Before that, she worked at the Marriott as a housekeeper for about three months in 2011. R. at 58, 61. She performed this work on a full-time basis and testified that this was the last time she worked full-time. R. at 60-61. When

---

[1] The ALJ noted that Ms. Jones stated that she had completed the 12th grade in her disability application. R. at 205.

asked about the self-employment income on her earnings report, she explained that she had been "doing hair . . . on the side." R. at 61.

At the May 21, 2015, hearing, she testified that she had stopped smoking about a year and a half before the hearing and that she was taking medication for her COPD. Id. She agreed that the medication relieved her shortness of breath "a little." Id. But, she explained that she sometimes has to go to the hospital for treatment. R. at 38. In the Function Report dated February 8, 2014, that Ms. Jones submitted with her application, she explained that after walking half a block, she sits for about 20 minutes before she can start walking again. R. at 226. She testified that she was using an Albuterol inhaler. R. at 68. At the October 8, 2015, hearing, Ms. Jones testified that the last time she went to UMC, her doctor had recommended that she be put on oxygen, but she could not afford the treatment. Id. She also testified that she was homeless. R. at 65.

Ms. Jones takes Lisinopril and hydrochlorothiazide for her hypertension. R. at 40. She agreed that her hypertension is under control when she takes her medication. Id.

Ms. Jones testified that she had been given braces for her carpal tunnel syndrome. R. at 40. When asked whether surgery had been recommended she said she did not want surgery. R. at 40-41. She was prescribed pain medication and she testified that this sometimes helps with the pain of her carpal tunnel syndrome. R. at 41. At the October hearing, she testified that she takes ibuprofen and wears braces at night. R. at 66-67. In her Function Report, Ms. Jones reported that the pain in her hands also makes it difficult to sleep. R. at 223.

In October 2015, Ms. Jones testified that her health had gotten worse since the May 2015 hearing. R. at 63-64. She said that she was fatigued, could not walk a block, and her hands were in severe pain. R. at 64. Ms. Jones testified that she would not be able to do a housekeeper job because of her hands and breathing. R. at 68. She said her fatigue and hands prevented her from

continuing to work as a hairdresser. R. at 62. She attributed her fatigue to her hypertension. R. at 66.

Ms. Jones testified that she does not do any housework and she does not drive. R. at 41. She watches TV during the day. R. at 69. In her Function Report, she explained that she needs her sister's help to dress because she cannot zip or button her pants due to the pain in her hands. R. at 223.

*Medical Records*

Ms. Jones visited the emergency room at the Touro Infirmary Hospital on July 10, 2012, complaining of pain in her wrist for three weeks and pain in her right foot for one week. R. a 429. She also needed blood pressure medication. Id. She reported she had not experienced similar symptoms in her wrist in the past. R. a 432. A hand exam was performed and no acute changes in range of motion were found. Id. Circulation and sensation were intact. Id. Compartment syndrome examination was normal. Id. A respiratory examination found lungs with equal breath sounds, clear to auscultation and percussion. Id. No rales, rhonchi, or wheezes were noted. Id. No increased work of breathing, retractions, or nasal flaring were noted. Id. Ms. Jones was given a tab of Norco while at the hospital, which decreased pain. R. at 433. An impression of joint pain was noted and her condition was described as stable on discharge. Id. Ms. Jones was provided with a prescription for Vicoprofen to take as needed. Id.

Ms. Jones again visited the emergency room at Touro complaining of hand swelling on September 13, 2012. R. at 424. She reported that she had pain and swelling in both hands at night for two weeks and that she had run out of blood pressure medication. Id. Her pain was 8 on a 10 point scale. Id. She was diagnosed with carpal tunnel syndrome. R. at 427. Upon physical examination she did not display signs of respiratory distress. Id. She had no wrist tenderness to

4

palpitation or range of motion limitations, she had no joint swelling, and she had negative Tinel's signs. Id.

Ms. Jones visited the emergency room on September 19, 2012, but she left without being seen. R. at 262. She visited again on September 20, 2012, and complained of acute bilateral hand pain for approximately 10 days. R. at 263. Ms. Jones reported to the staff that she had visited another emergency room one week prior and had been diagnosed with carpal tunnel syndrome and placed on Motrin. Id. She reported occasional tingling in her second and third digits. R. at 264. The musculoskeletal exam revealed positive Tinel's signs bilaterally, with no swelling, no ecchymosis, and no deformities. Id. She had a full range of motion in all joints. Id. Ms. Jones was diagnosed with carpal tunnel syndrome. Id. She was given a Kenalog 40 injection, ordered to wear wrist splints for two weeks, and prescribed tramadol to be taken as needed for severe pain. R. at 264-66.

Ms. Jones visited the Interim LSU Public Hospital on January 7, 2013, for a blood pressure check. R. at 295. Past medical history of COPD and hypertension were noted. Id. Her diagnosis was hypertension. Id. Her blood pressure was 125/88. R. at 297. She was instructed to continue taking her blood pressure medication and adhering to a low salt diet. Id. She reported taking Albuterol for wheezing or shortness of breath, as well as hydrochlorothiazide and lisinopril. R. at 296.

On January 16, 2013, Ms. Jones again visited the Interim LSU Public Hospital. R. at 303. She received a flu shot and a mammogram and gynecological exam were ordered. R. at 304.

On January 25, 2013, Ms. Jones had a follow up appointment at the Interim LSU Public Hospital for a medication refill and with complaints of breast pain. R. at 311. She was diagnosed with a vitamin D deficiency, a potassium deficiency, and hypertension. Id. Her blood pressure was

noted to be stable. Id. Ms. Jones denied cardiovascular or respiratory complaints. R. at 314. After physical examination by nurse practitioner Patricia Ann Chatham, it was reported that she had no respiratory distress, no rales, and no tenderness. R. at 315.

She visited the emergency room at the Interim LSU Public Hospital on January 28, 2013, but she left without being seen after triage. R. at 324-34.

Ms. Jones visited the emergency room at the Interim LSU Public Hospital again on February 25 or 26, 2013. R. at 335. She complained of a headache and blurred vision for two days. R. at 338. She also complained of chest pain the day before but stated that she had not had pain in the last 24 hours and that pain was not worse with activity. Id. The review of her cardiovascular system was noted positive for chest pain, but the review of the respiratory system was marked negative for chest tightness. R. at 338. Her breath sounds were normal. R. a 339. She reported that she had quit smoking three months earlier in December 2012. R. a 338, 340. Resident doctor Scott Mackey reported that the headache was likely secondary to Ms. Jones's hypertension. R. at 339. Regarding her chest pain, he reported that he felt "it is ACS or a pulmonary embolism" and noted "she is chest pain-free now." Id. Resident doctor Kara E. Ward noted that Ms. Jones reported intermittent rib cage "tightness" for two weeks. R. at 340. Her diagnosis included chest pain, unspecified and headache. R. at 335-36. A chest x-ray was performed. R. a 348-49. Findings were that the "cardiac silhouette is within normal limits for size. The lungs are symmetrically well aerated. No acute osseous changes. Thoracic spondylosis is present." R. at 349. Dr. Ursin T. Stafford noted that Ms. Jones was seen and given outpatient referral for her complaints and that she "left before I could talk to her. I did see her in the waiting room in no distress." R. at 337. Dr. Stafford added that Ms. Jones had labs performed and was discharged in good condition. Id.

Ms. Jones visited the emergency room at the Interim LSU Public Hospital on March 12, 2014. R. at 371. She complained of left sided facial pain and numbness, post nasal drainage, and cough productive of yellow sputum. R. a 373-74. She also complained of bilateral finger numbness for several months that improves with wearing a brace. R. at 374. In a review of systems she was found negative for shortness of breath and positive for productive cough. Id. She was found negative for weakness and positive for finger numbness. Id. Upon physical examination, she had a positive Phalen's sign and negative Tinel's sign. R. a 375. She had full range of motion in all extremities with 5/5 strength. Id. A chest x-ray was performed. Id. Mild bilateral pulmonary hyperinflation consistent with obstructive lung disease was found, with the lungs otherwise clear. Id. She was diagnosed with cough, acute sinusitis, chronic airway obstruction (not elsewhere classified), unspecified essential hypertension. R. at 371. She was released in good condition. R. at 372.

Dr. Miljana Mandich[2] performed a consultative examination for the state disability determination agency on March 21, 2014. R. at 272. Ms. Jones complained of a cough in the morning producing greenish sputum or clear phlegm. R. at 273. She complained of shortness of breath with walking about a half block. R. at 272. Ms. Jones told Dr. Mandich that she had quit smoking about two months earlier and had been smoking less than a pack of cigarettes a day for

---

[2] Apparently in the context of an earlier disability application, Dr. Mandich performed a consultative examination of Ms. Jones on February 4, 2011. R. at 279. At that time, Ms. Jones did not complain of pain in her wrists, however, she complained of shortness of breath with walking about one block. R. at 280. She also complained of low back pain. Id. After a physical examination, Dr. Mandich reported Ms. Jones's lungs were clear to auscultation and percussion with normal breath sounds bilaterally. R. at 281. Ms. Jones said that she had been smoking a pack of cigarettes a day for about thirty years, but had cut down to about half a pack a week over the preceding year. R. at 279. Dr. Mandich provided the following diagnoses: "Hypertension well controlled with medication. COPD and bronchitis by history. Recurrent low back pain with certain activities with no pain and no positive physical findings at this time." Id. Attached to Dr. Mandich's February 2011 report is the report of Dr. Gary F. Carroll dated February 11, 2011 regarding spirometric testing of Ms. Jones that yielded findings of normal results. R. at 286-91. The report predicted COPD risk at 19%, or 9% if she stopped smoking. R. a 289.

7

about twenty-five years. Id. Ms. Jones said she had a lot of pain in her wrists, mostly at night and also when she is holding and handling heavy objects. Id. She reported that she had last worked at New Orleans City hall performing janitorial services but was let go when an employee that was on leave came back to work. Id. Dr. Mandich noted that Ms. Jones performs all activities of daily living, but does not drive. Id.

Dr. Mandich performed a physical examination and reported that Ms. Jones's chest was normal and her lungs were clear, "with slightly distant breath sounds bilaterally and normal respiratory expansion." R. at 274. She found no wheezes or rhonchi. Id. In the neurological examination, Dr. Mandich reported that Ms. Jones's had normal grip strength, grasping, and dexterity bilaterally. Id. All modalities of sensation were intact including fingers. Id. Dr. Mandich reported Ms. Jones had negative Tinel's signs at the wrists and slightly positive Phalen's signs. Id. Ms. Jones had 1+ symmetrical deep tendon reflexes. Id. Dr. Mandich obtained x-rays with two views of each the right and left hand. R. at 275. On both hands, Dr. Mandich found the cartilaginous interspaces were adequate and bone density was well preserved. Id. Dr. Mandich found there was no swelling in Ms. Jones's hands. Id. She also found no paresthesias in any of the fingers. Id.

Dr. Mandich provided the following diagnoses:

1. COPD by history secondary to cigarette smoking.
2. Hypertension well controlled with medication.
3. Pain in the wrists. The patient reports periodic tingling in all of her fingertips. There are no positive physical findings today; consider osteoarthritis of the wrists versus neuropathy such as carpal tunnel syndrome.

Id.

Ms. Jones presented at the NOMH Emergency Department on June 9, 2014, with a sinus infection. R. at 439. Diagnosis of cough and hypertension were also noted. R. at 442. Ms. Jones

8

reported that she had been seen by urgent care and treated with 10 days of amoxicillin, but had no improvement. R. a 439. She was prescribed Cipro and her blood pressure medication (Lisinopril and hydrochlorothiazide) was refilled. R. at 441. She reported quitting smoking six months previously. R. at 439. Upon physical examination she was found negative for chest tightness, shortness of breath, wheezing, and chest pain. R. a 440. A chest x-ray was performed. R. a 443. No pneumonia or source of cough was identified. Id. Dr. Nancy E. Dietham reviewed the x-ray and found no evidence of pulmonary disease, pleural disease, lymph node enlargement, or cardiac decompensation and no free air beneath the diaphragm or significant osseous abnormality. Id.

Ms. Jones went to the Garden Park Medical Center Emergency Department on September 11, 2015, complaining of COPD problems and reporting that she had run out of blood pressure medicine. R. a 477. She reported frequent COPD exacerbations, but no fever or sputum. Id. She reported she had just had a steroid course from Ochsner 2-3 weeks before. Id. Upon physical examination of respiratory system and chest, no distress, tenderness, hemoptysis, retractions, accessory muscle use, prolonged expectorant phase, wheezes, wheezes, rales, rhonchi, or stridor were found. R. a 478. Very mild tachypnea as noted. Id. A chest x-ray was performed, with an impression of no finding to suggest acute chest disease R. a 496. Ms. Jones with discharged with instructions for exacerbation of COPD, including the recommendation to stop smoking and to avoid smokers and harsh chemicals. R. at 501-02.

*Vocational Expert Testimony*

Vocational expert Hayward Johnson testified at the second hearing. R. at 70. He classified Ms. Jones's past work as follows: prep cook (DOT number 317.687-010) – medium exertion, SVP 2; busser (DOT number 311.677-018) – medium exertion, SVP 2; housekeeper in the hotel/motel industry (DOT number 323.687-014) – light exertion, SVP 2; janitor (DOT number 381.687-018)

9

– medium exertion, SVP 2; hair stylist (DOT number 332.271-018) – light exertion, SVP 6. R. at 71. Mr. Johnson concluded that Ms. Young does not have readily transferable skills. Id.

The ALJ posed the following hypothetical to Mr. Johnson: an individual with the same age, education, and past work experience as Ms. Jones and a residual capacity for light work with the need to avoid temperature extremes and avoid concentrated exposure to environmental irritants. R. at 71. Mr. Johnson testified that such a person could perform Ms. Jones's past work as a housekeeper or hairstylist. R. at 71-72, 74. The ALJ asked Mr. Johnson to consider if the same person was limited to only occasional handling, fingering, and grasping. R. at 73. Mr. Johnson said that handling required for the housekeeper[3] and the hair stylist positions would exceed that limitation. R. at 73. The ALJ asked Mr. Johnson to consider if the same person was unable to sustain sufficient concentration, persistence, and pace, and she was not able work eight-hour days five days per week. R. at 74-75. Mr. Johnson said there would be no other jobs that the person could perform. R. at 75.

Ms. Jones's attorney followed up with Mr. Johnson on the second hypothetical with the limitation to occasional handling, fingering, and grasping, asking Mr. Johnson to consider if the person was unable to perform work activity for 20% of the time. R. at 76-77. Mr. Johnson said that such person could not perform Ms. Jones's previous work. R. at 77.

Mr. Johnson confirmed that his testimony was consistent with the Dictionary of Occupational Titles.

---

[3] Later Mr. Johnson seemed to say that the housekeeper position would be acceptable. R. at 75 ("The housekeeper position would allow the individual to occasion [sic] handle . . . . And there's no fingering demand."). Ultimately the ALJ did not impose a handling limitation so it is unnecessary to clarify this testimony.

## Decision of the Administrative Law Judge

The ALJ determined that Ms. Jones meets the insured status requirements of the Act through September 30, 2017. The ALJ found that Ms. Jones has not been engaged in substantial gainful activity since June 20, 2013, the alleged disability onset date. The ALJ concluded that Ms. Jones has the following severe impairments: hypertension and COPD. She concluded that Ms. Jones's carpal tunnel syndrome was not severe because she found that the condition did not more than minimally affect her ability to work. The ALJ explained that Ms. Jones had shown positive Tinel's signs in her wrists, but did not display swelling and retained full range of motion in all joints. She added that Ms. Jones had acknowledged that wearing wrist splints helped with the pain.

The ALJ next concluded that Ms. Jones does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered Listing 3.02 for COPD and Listing 4.00 for hypertension. The ALJ further determined that Ms. Jones has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except she must avoid temperature extremes and concentrated exposure to environmental irritants. In making this determination, the ALJ concluded that Ms. Jones's largely normal physical examinations and the few treatment records associated with COPD indicated that her hypertension was under control with medication and that her COPD was fairly stable. However, she found that Ms. Jones takes medication for both conditions and that Ms. Jones appeared to have a COPD exacerbation in 2015 which required environmental limitations to avoid respiratory irritation and COPD exacerbation. The ALJ then found that Ms. Jones was capable of performing her past relevant work as a housekeeper at a light and unskilled level and as a hairstylist at the light, skilled level. Thus, she

concluded that Ms. Jones has not been under a disability as defined by the Act from June 20, 2013, through the date of decision on December 21, 2015.

## Statement of Issues on Appeal

Issue No. 1.   Whether the ALJ erred by failing to find Ms. Jones's carpal tunnel syndrome was severe.

Issue No. 2.   Whether the ALJ erred by failing to consider and incorporate limitations related to Ms. Jones's carpal tunnel syndrome into Ms. Jones's residual functional capacity.

Issue No. 3.   Whether the ALJ erred by failing to properly reduce Ms. Jones's residual functional capacity in accordance with her COPD.

## Analysis

### I. Standard of Review.

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence is more than "a mere scintilla," but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983). Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461.

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113 (1992). Despite this Court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether

substantial evidence exists to support it. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

## II. **Entitlement to Benefits under the Act.**

To be considered disabled under the Act, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to the regulations promulgated under the Act, the Commissioner engages in a five-step sequential evaluation process to determine whether an individual qualifies as disabled. See 20 C.F.R. § 404.1520(a)(4). At each step, if the Commissioner determines that an individual is or is not disabled (depending on the step), her decision is made on that basis and she does not proceed to the next step. Id. Following these same five steps, the ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

Perez, 415 F.3d at 461. The burden of proof is on the claimant in steps one through four, and then at step five, the Commissioner must "show that the claimant can perform other substantial work in the national economy." Id. Once the Commissioner has made this showing, the claimant bears the burden to rebut the finding. Id. An assessment of the claimant's residual functional capacity is used in steps four and five to determine the claimant's ability to perform the claimant's past work or any other type of work. Id.

## I. Plaintiff's Appeal.

*Issue No. 1. Whether the ALJ erred by failing to find Ms. Jones's carpal tunnel syndrome was severe.*

Ms. Jones insists the ALJ's finding that her carpal tunnel syndrome is not severe is not supported by substantial evidence. She argues that the ALJ's rationale for the finding is conclusory and fails to take into account that she must wear wrist splints. She argues that wearing wrist splints would get in the way of performing daily work tasks. Ms. Jones notes that an impairment is "not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Titles II & XVI: Med. Impairments That Are Not Severe, SSR 85-28 (S.S.A. 1985) (quoting Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985)). However, as the Commissioner points out, the Commissioner does not have the burden to prove the absence of disabling limitations. Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983) (rejecting claimant's argument that the Secretary's decision "was not predicated on any evidence at all," and explaining that "the Secretary does not have the burden of making an initial showing of nondisability.").

The Court finds that substantial evidence supports the ALJ's determination that Ms. Jones's carpal tunnel syndrome is not severe. The objective medical evidence shows that carpal tunnel syndrome does not interfere with her ability to work. The medical records indicate that she first complained of wrist pain in July 2012 and was diagnosed with carpal tunnel syndrome in September 2012. In her September 13, 2012, emergency room visit she had no wrist tenderness to palpitation or range of motion limitations, no joint swelling, and negative Tinel's signs. In her September 20, 2012, emergency room visit she had full range of motion, no swelling, but positive Tinel's signs bilaterally. It appears Ms. Jones did not seek medical attention for her hand or wrist

14

issues until March 12, 2014, when she visited the emergency room for acute sinusitis and complaints of finger numbness. At this visit, she had full range of motion and 5/5 strength. R. at 375. She had a negative Tinel's sign and a positive Phalen's sign. Id. During Dr. Mandich's March 2014 consultative examination, there was no swelling in Ms. Jones's hands and no paresthesias in her fingers. R. at 274. She had a negative Tinel's sign and a slightly positive Phalen's sign. Id. Dr. Mandich diagnosed Ms. Jones with "Pain in the wrists," and noted "The patient reports periodic tingling in all of her fingertips. There are no positive physical findings today; consider osteoarthritis of the wrists versus neuropathy such as carpal tunnel syndrome." R. at 275. Ms. Jones visited the emergency room again in June 2014 and September 2015 without any complaints related to her hands or wrists. These records all show that Ms. Jones's carpal tunnel syndrome was non-severe and indicate that the condition was under control with medication and wrist splints.

The record includes evidence of Ms. Jones's subjective complaints—for example, she testified that pain in her hands was severe and that she would not be able to work as a housekeeper or hairdresser because of her hands. However, these complaints are not corroborated by the medical evidence. Indeed, Ms. Jones also testified that medication helps with the pain of her carpal tunnel syndrome. And as the ALJ noted, Ms. Jones reported that wearing a brace helped with the wrist pain during her March 2014 emergency room visit. Ms. Jones suggests that the mere fact that wrist splints were prescribed to be worn for two weeks in 2012 indicates that her ability to perform work would necessarily be impaired. But the medical records do not support a finding that Ms. Jones was ordered to wear wrist splints all day or several days during the week such that the splints would interfere with her ability to work. In fact, Ms. Jones's testimony is that she wears the braces at night. There is simply no medical evidence to support a finding that Ms. Jones's carpal

15

tunnel syndrome interferes with her ability to work. Instead, the ALJ's finding that Ms. Jones's carpal tunnel syndrome is non severe is supported by substantial evidence.

*Issue No. 2.     Whether the ALJ erred by failing to consider and incorporate limitations related to Ms. Jones's carpal tunnel syndrome into Ms. Jones's residual functional capacity.*

Ms. Jones argues that even if her carpal tunnel syndrome is non-severe, the ALJ was obligated to consider the effect of her carpal tunnel syndrome in assessing her residual functional capacity. She claims that fine manipulative or grasping limitations "would be expected" to be included in her residual functional capacity because she testified that she experienced such impairments.

But as the Commissioner points out, the ALJ did in fact consider Ms. Jones's carpal tunnel syndrome in assessing her residual functional capacity at Step 4 of the analysis. The ALJ considered that in March 2014, Dr. Mandich found Ms. Jones's grip strength, grasping, and dexterity bilaterally was normal. Dr. Mandich found all modalities of sensation intact and that Ms. Jones displayed a negative Tinel's sign and only a slightly positive Phalen's sign. Dr. Mandich found the imaging studies of Ms. Jones's hands largely normal. Based on this evidence, the ALJ did not include any fine manipulation or grasping limitations. As the Commissioner notes, Ms. Jones points to no medical evidence indicating that she had any functional limitation related to grasping or fine manipulation. The ALJ's decision not to include functional limitations related to handling and grasping is supported by substantial evidence.

*Issue No. 3.     Whether the ALJ erred by failing to properly reduce Ms. Jones's residual functional capacity in accordance with her COPD and carpal tunnel syndrome.*

Ms. Jones also argues that the ALJ's limitation to light work and avoiding temperature extremes and concentrated exposure to environmental irritants is insufficient and the ALJ should have included additional limitations. Ms. Jones says that her medical records indicate that she

should limit her activities because of her COPD. But the cited page of the medical records does not contain such a recommendation. Instead, the COPD discharge instructions caution Ms. Jones to stop smoking and to keep other smokers from smoking around her, to avoid using harsh chemicals when cleaning, to avoid contact with anyone who has a respiratory infection, to get vaccines against influenza, and to practice pursed-lip breathing. With regards to activity, the instructions only instruct that she should seek medical attention immediately if she becomes unable to complete her everyday activities.

Ms. Jones again notes that she was directed to wear wrist splints for her carpal tunnel syndrome and adds that she testified that she could not lift or hold heavy objects because of the pain in her hands. She says that in her Function Report and testimony, she reported that she could only walk half a block before needing her inhaler. She also notes that she testified that oxygen was recommended but she could not afford the treatment. She argues that light work involves lifting up to 20 pounds, and lifting 10 pounds frequently, as well as a good deal of walking or standing.[4] She insists that she could not perform light work and that she should have been limited to sedentary work.[5]

The Court finds these record citations are insufficient to cast doubt on the ALJ's determination of Ms. Jones's residual functional capacity. As noted, the medical evidence Ms.

---

[4] While light work does not necessarily involve a "good deal of walking or standing," to be capable of performing light work, a claimant must be able to do substantially all of the activities listed in the following definition: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §404.1567(b).

[5] Ms. Jones also lists a fourth argument: that a finding of disabled would be appropriate under the Medical Vocational Guideline 201.10 because under that guideline, a person of Ms. Jones's age who is limited to sedentary work would be categorized as disabled. The Court does not consider this as a separate assignment of error because it is predicated on a finding that the ALJ's determination of Ms. Jones's residual functional capacity is not supported by substantial evidence and that the ALJ should have limited Ms. Jones to sedentary work. As discussed in this section, the ALJ's limitation to light work is supported by substantial evidence.

Jones cites does not actually recommend that Ms. Jones restrict activity due to COPD. The COPD recommendations include avoidance of smoke and harsh chemicals. Consistent with this, the ALJ incorporated restrictions related to respiratory irritants. No medical record recommends further limitations. With regards to Ms. Jones's own statements that she cannot walk more than half a block or hold things due to hand pain, the objective evidence does not support these claims. As discussed in Issue 2 above, there is substantial evidence to support the ALJ's determination that Ms. Jones's carpal tunnel syndrome does not interfere with her ability to work. With regards to COPD, while her medical records consistently report a history of COPD, there do not appear to be any breathing complaints in her medical records throughout 2012 and 2013. Although she reported shortness of breath with walking half a block to Dr. Mandich during the consultative examination in March 2014, upon physical examination Ms. Jones's chest was normal and her lungs were clear, "with slightly distant breath sounds bilaterally and normal respiratory expansion." The only other 2014 medical record is a June 2014 emergency room visit related to a sinus infection where Ms. Jones was found negative for shortness of breath. It appears she had a COPD exacerbation that resulted in an emergency room visit in September 2015 at which she reported frequent COPD exacerbations. However, there is simply no indication other than this September 2015 emergency room visit that Ms. Jones sought treatment for COPD that affected her ability to work. The ALJ's limitation to light work and incorporation of restrictions on respiratory irritants as the only necessary limitations due to her COPD and carpal tunnel syndrome is supported by substantial evidence.

**RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that the Motion for Summary Judgment filed by the plaintiff (Rec. Doc. 15) be DENIED; and the Motion for Summary Judgment filed by the Commissioner (Rec. Doc. 16) be GRANTED.

**OBJECTIONS**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 15th day of August, 2017.

                                        Janis van Meerveld
                                    United States Magistrate Judge